374 S.E.2d 527

**Robert W. KNIGHT**

v.

**CIVIL SERVICE COMMISSION OF WEST VIRGINIA, and Department of Corrections.**

**No. 18043.**

Supreme Court of Appeals of West Virginia.

Nov. 7, 1988.

William D. Turner, Grant Crandall, Charleston, for Robert W. Knight.

Charles G. Brown, III, Atty. Gen., Janet Frye Steele, Asst. Atty. Gen., for appellee.

PER CURIAM:

This is an appeal by Robert W. Knight from the March 12, 1987 order of the Civil Service Commission (CSC) which upheld three suspensions of the appellant in his position as a corrections officer at the West Virginia Penitentiary at Moundsville. The appellant contends that the suspensions were the result of a personality conflict between him and the warden and were based on infractions of rules which are selectively enforced. Therefore he contends that there was no good cause shown for the suspensions. We affirm.

The facts of this case are based on joint stipulations filed by the parties with the CSC.

The appellant, a corrections officer with seven years experience received three suspensions between August, 1986 and January, 1987.

The first incident occurred August 18, 1986 when Warden Hedrick called roll. Roll call requires the guards to stand at attention in a fashion similar to full military, if not, para-military procedure. Knight did not stand at attention. He was called aside by the warden and told to comply with the order, or he would face disciplinary action. Knight replied "do what you have to." He continued to disobey the order, and the following day, received a three-day suspension. Earlier that day the appellant was leaning, with a soda can in his hand and his shirt unzipped, as Warden Hedrick provided a tour to legislators.

On August 19, September 20 and October 8, 1987, Knight again disobeyed orders from Assistant Watch Commander Glasscock and Shift Commander Nibert, who similarly ordered the men to come to attention for roll call. On each occasion, Knight's superior officers informed him of

his failure to properly stand at attention and Knight refused, stating "with no disrespect to you." As a result of these three additional incidents, Knight received a thirty-day suspension, effective October 10, 1986.

On the evening of December 22, 1986, Knight took a battery from the penitentiary. Assistant Watch Commander Larry Spencer telephoned him at home and ordered him to return the battery. Knight replied that he was ill, very tired, and would return the battery the following day.[1]

There is disputed testimony in the record concerning whether the guards are required to stand at the more stringent full military attention or para-military attention, and as to the number of guards who complied with the requirement.[2]

The CSC reviewed the facts and found that Knight was suspended for good cause in light of *Bone v. W. Va. Dept. of Corrections*, 163 W.Va 253, 255 S.E.2d 919 (1979), concerning the insubordination of prison guards.

'A final order of the Civil Service Commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review.' Syl, *Guine v. Civil Service Commission*, 149 W.Va. 461, 141 S.E.2d 364 (1965).

Syl. pt. 1, *AFSCME v. Civil Serv. Com'n of W. Va.*, 174 W.Va. 221, 324 S.E.2d 363 (1984).

The appellant contends that the suspensions of Knight are similar to the situation in *Guine v. CSC*, 149 W.Va. 461, 141 S.E.2d 364 (1964). Guine, a dentist employed by the Department of Health, was dismissed for allegedly using a state vehicle without authorization to transport pri-

---

1. Another guard called as a witness for Officer Knight testified that he had taken batteries from the prison without recourse. However, he testified that if ordered to return a battery he would comply.

2. Knight contended that pursuant to a warden's directive, the guards are required to stand at full military attention and that 50% of the guards do

not comply with this requirement. Warden Hedrick testified that a less stringent, para-military form of attention is observed and that the guards essentially comply with the requirement. When they do not comply they are ordered to do so by their superior officer. The written warden's directive concerning the procedure was not produced.

vate property. During the hearings, Guine produced overwhelming evidence that he was given tacit approval to use a state vehicle to transport medical supplies to another state facility. It was also revealed that less than one month prior to the incident, Guine's superior was directed to obtain the dentist's resignation, or, if Guine refused, to discharge him. This Court held that the CSC finding that good cause existed for the dismissal was not supported by the evidence.

In this case, the appellant was told on several occasions to comply with the orders of his superiors. He refused to comply and was suspended. Unlike *Guine*, there is no question that the appellant was insubordinate. While there was some factual question as to whether his suspensions were the result of his continued insubordination or his initial confrontation with the warden, the facts contained in the record would support the CSC finding of good cause.

As stated in *Bone v. W. Va. Dept. of Corrections*, 163 W.Va. 253, 258, 255 S.E.2d 919, 921 (1979):

It would indeed be an unusual circumstance which would permit a penitentiary guard to make his own determination as to the lawfulness of an order given him.... He is in a position similar to that of personnel in the military service. To obey orders from his superiors is a prime obligation of his employment ... Of course, if the order were blatantly unlawful, the guard should be held blameless upon his refusal to obey.

While appellant Knight's behavior was less egregious than that of Bone, the employer's disciplinary action was less severe than that in *Bone*. The orders were not "blatantly unlawful" and the CSC could properly find from the evidence that the suspensions were not based upon a conflict between the warden and the guard, but rather good cause. Therefore, the March 12, 1987 order of the CSC is affirmed.

AFFIRMED.